THE PEOPLE *v.* ROBLES.

APPEAL from the District Court of Humacao.

No. 120.—Decided December 13, 1907.

NEW TRIAL—EVIDENCE INSUFFICIENT TO SUPPORT THE VERDICT.—Where the only
ground for assailing a judgment of conviction is the insufficiency of the evi-
dence to support the same, the better practice is to move for a new trial be-
fore the trial court.

EVIDENCE—ACCESSORIES—CORROBORATION OF TESTIMONY THEREOF.—A witness who
has been prosecuted together with the defendant and convicted of the same
crime with which the defendant is charged, is an accessory for the purposes
of section 253 of the Code of Criminal Procedure and as such, his testimony
must be corroborated by some other evidence which in itself tends to connect
the accused with the commission of the crime, and such corroborative evidence
is insufficient when it merely tends to show the existence of the *corpus delicti.*

ID.—CIRCUMSTANTIAL EVIDENCE.—It is not necessary that corroborative evidence
be direct evidence because it may very well be circumstantial so long as it
shows the guilt of the accused or is sufficient to connect him with the com-
mission of the crime.

ID.—Where the corroborative evidence tends solely to raise a suspicion against the
presumption of innocence in favor of the accused, such evidenc is not sufficient
to warrant his conviction.

APPEAL—EVIDENCE—VERDICT—NEW TRIAL.—Where the evidence taken at the trial
is not sufficient to support the verdict of "guilty," the judgment appealed
from must be reversed and a new trial ordered.

The facts are stated in the opinion.

*Mr. Rossy, fiscal,* for respondent.

The appellant did not appear.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This prosecution was instituted against Candelario Robles,
Antonio Rivera and Eusebio Vicente for the crime of burglary
in the first degree. It is charged in the information that on
the night of the 4th of June, 1907, in the town of Juncos, the
three men named broke open the store of Quiterio López and
robbed him of money and other property. The defendants
Robles and Rivera were tried separately. Vicente seems to
be still at large, as a fugitive from justice. Rivera having
been first tried and convicted, was used as a witness for the

The People against Robles on the trial. The verdict of the jury was rendered, on the 6th of August last, finding the defendant guilty as charged. On the 8th of the same month sentence was pronounced by the court condemning the defendant Robles to suffer imprisonment in the penitentiary, for the period of 10 years at hard labor and to the payment of the costs of the prosecution. On the 15th of August last an appeal was taken to this court from the judgment rendered against him, and the accused asks a reversal of the judgment and that a new trial be granted.

No motion was made for a new trial in the court below; if it had been asked, probably a new trial would have been granted. This is always the better practice in criminal cases, when the insufficiency of the evidence to justify a conviction is the only matter of which complaint is made.

The only question arising on this appeal is the sufficiency of the corroboration offered to the testimony of Antonio Rivera, who was the principal witness produced and relied on for The People. Article 253 of the Code of Criminal Procedure reads as follows:

"A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof."

There is no question that the witness, Rivera, falls within the category of an accomplice, within the purview of the law of evidence.

The section of our Code of Criminal Procedure above cited is identical with and copied from section 1111 of the Penal Code of California, and of course we may look for constructions of that section by the Supreme Court of the said State and follow them as we have often done in such cases.

In one of the California cases the trial judge instructed the jury as follows:

"Where a number of persons have been engaged in the commission of an offense, when any one of them turns State's evidence and testifies to the circumstances under which the alleged crime was committed, no one of the parties engaged in the commission of the crime can be convicted upon the testimony of the accomplice, unless there is other evidence outside of his testimony which tends to connect the defendant with the commission of the offense, and the connection is not sufficient if it simply shows the offense or the circumstances of the offense itself.

❋        ❋        ❋        ❋        ❋·        ❋        ❋

"Whenever the prosecution introduces evidence which tends to connect the defendant with the commission of the given offense, then the jury may take into consideration, and should do so, the evidence of the accomplice, for the purpose of determining whether or not the defendant is guilty of the given offense; but this evidence upon propositions other than those showing the fact of the offense itself committed, and the circumstances thereof."

The Supreme Court of California goes on to say:

"But section 1111 of the Penal Code does not require that the corroborating evidence shall be such as shall prove that the accomplice has told the truth; nor does it declare that he must be presumed to have sworn falsely, such presumption to be overcome only in case the other evidence shall show he has told the truth. It simply requires that in addition to his testimony—however trustworthy that testimony—there must, to justify a conviction, be evidence tending to connect the defendant with the commission of the offense. Of course, mere evidence of the *corpus delicti* is not such evidence." (*People* v. *Clough,* 73 Cal., 349, 350, 351 and 352.)

We may also refer to the following cases: *People* v. *Main,* 114 Cal., 632; *People* v. *Smith,* 98 Cal., 218; *People* v. *Cleveland,* 49 Cal., 577; *People* v. *Ames,* 39 Cal., 403; *People* v. *Garrett,* 29 Cal., 624.

In our opinion the California cases expound the law correctly and should be followed in the interpretation of this statute.

There is no direct testimony found in the record, connecting the appellant "with the commission of the offense" except that of Rivera. The corroborating evidence is purely circumstantial. It is not necessary that a testifying accomplice should be corroborated by an eyewitness to the crime. Circumstantial evidence is ample to serve as corroboration if it demonstrates the guilt of the accused, or is sufficient to "connect the defendant with the commission of the offense." As the trial judge correctly instructed the jury at the request of the defendant's counsel, we may say of corroborating testimony:

"If that evidence only creates suspicions, it is insufficient to corroborate the testimony of the accomplice. The testimony of the accomplice alone is not sufficient; it is not necessary to have corroboration for each statement, each fact testified to by the accomplice, but if the corroborative evidence tends to connect the accused with the commission of the crime, it is sufficient. If it only creates suspicions in regard to the accused, it is not sufficient."

This instruction was given in accordance with a request of counsel to instruct the jury in regard to the requisites which circumstantial evidence should have in order to be taken into consideration in arriving at a verdict. It is substantially correct, though very much condensed.

As this proposition is expressed in the syllabus to one of the California cases:

"The corroborating evidence required to convict a defendant, in addition to that of an accomplice, is not sufficient if it merely tends to raise a suspicion of guilt of the accused." (*People* v. *Thompson*, 50 Cal., 480; *People* v. *Koenig*, 99 Cal., 574; *People* v. *Ames*, 39 Cal., 403.)

This is substantially the same as the instruction given by the trial judge in the case at bar at the request of the defendant who appears here as the appellant. No sufficient fault can be found with the charge given to the jury to justify

a reversal of the judgment rendered against the defendant. Now let us examine the evidence introduced on the trial. In turning to the statement of facts, erroneously called, in the brief of appellant, a statement of the case, we find the only corroborating circumstances to support the testimony of the accomplice Rivera to be those detailed by the witnesses for The People as follows:

"*Quiterio López,* the owner of the store which was burglarized, says: 'That about 2 or 3 o'clock in the morning of the 4th of June last, he was advised by the police that his store had been broken into in Juncos; and that he went there and found the clerks there, and he found that they had taken his trunk and there was missing the amount of $165 to $170 in money; that he went to the headquarters of the police, and there found a horse upon which he mounted and went out of the town to look for the burglars; and that when he was returning, he found Antinio Rivera, who had one of the witness's coats, and he took him, and found on him $35.70.'

"That the witness was in the store at about 2 o'clock and went to the Marina to look around, and on coming back the policeman told him that they had burglarized his store; that he does not know at what hour the door was forced by the burglars to gain an entrance into his store; that the last time he saw the trunk was when he closed the same and went out into the street at 10 o'clock in the night; that the store was closed, and when witness returned, he found that he had been robbed and that the back door had been opened, and that the burglars had gone out through the front door with the trunk; that the trunk is in his possession, as it was delivered to him by the judge."

José Arzuaga, the justice of the peace, says:

"That he is a resident of Juncos, where he discharges the duties of the office of the justice of the peace; that he is acquainted with Candelario Robles and has known him since he was a boy; that witness made an investigation in this case; that on the first day he went to investigate the case, and among the witnesses called was Candelario Robles, who testified that he did not know the individuals Antonio Rivera and Eusebio Vicente, and that he had never seen them; that the witness made the investigation, and on the next day sent for him, and said that he wished to testify the truth; that then the witness

ordered the court constituted there, and Candelario told him that in truth they had come the day before in the afternoon with a letter for Quiterio López, and that he showed the letter; that the witness was not in the custom of making promises to witnesses in order to get them to testify, and that he promised nothing; that Candelario Robles told him that they had brought a letter for Quiterio López and that he wanted him to show the letter, which he did; that he also stated that he had retired to bed at 10 o'clock.''

To questions put by the counsel for the defense, witness stated:

''That the testimony of Candelario Robles amounted to the statement that he had retired to bed at 10 o'clock at night, and that he knew those individuals; that this statement was made by the accused without being called by the witness—that is to say, explicitly—and said that he wished to testify the truth.''

Victor Maldonado says:

''That he is resident of San Lorenzo, living at present in Juncos, and that he is the reader in the Fariña factory in Juncos, but that every Saturday he goes to San Lorenzo.

''That on the night of the 4th of June he was in the house of Candelario Robles, at which house he slept; that the witness retired at 8 o'clock in the evening; that Candelario Robles came here at early morning; that when they went out with the policemen it was 4 o'clock in the morning; that the police took witness from the house where he slept to the alcaldía.

''That he heard Candelario Robles when he reached his house call his wife and say 'Julia,' and when she opened the door he entered; that the police arrived after a short time and took all who were there, the lady, himself, the witness, and the father (of Candelario).

''That the police found Candelario in his house; that the police placed Candelario where he could not communicate with any one, and left the witness outside.

''That when Candelario Robles arrived witness did not observe him put away any money or other article in his house, and when they arrested him, he did not see him take out anything whatever.

''That the witness sleeps in the same room with Candelario Robles and his wife, separated by a curtain, they on cne side, and he on the other.''

## Lino Miranda, the jailer, says:

"That he is a resident of Juncos, warden of the municipal jail; that he knows Candelario Robles well.

"That on the night of the burglary the witness was in company with the policeman Torres on the street; that they reached the corner of Cándido Rodríguez, and noticed that the establishment of Quiterio Quiñones was open, and the bar of the door in the street; that the police entered and called the clerks, and asked them if they slept with the doors open, and that they looked to see what was missing, and that they found that the trunk of the owner was gone.

"That on that night he saw Candelario Robles at about 8 o'clock, and that he was alone; that on that night Antonio Rivera was taken, and $35.70 were found on his person, and some of the clothes that had been in the trunk; that the policeman Torres arrested Antonio Rivera and that afterwards the policeman, Victor Collazo, brought Candelario Robles."

## Pedro Quiñones, a baker, says:

"That he is a resident of Juncos, and that his occupation is that of baker; that he knows Candelario Robles; that on the night of the 4th of June the witness was at a wake which was held at the house of Celestino Vega, and Pedro Santana invited him to give a serenade, and they both went out together at about 10 o'clock at night, and returned about 11; that between 11.30 and 12 o'clock Candelario Robles came to the house where the witness was at a supper which the witness was taking with Pedro Santana; that the witness invited him, and Candelario would not stay; that a few moments afterwards, another individual came along with the brim of his hat turned down, and said he was a vendor of hardware and notions; that this individual went away with Candelario, and they said they were each going to sleep at different places.

"That when the supper was over, the witness went out and met on the street Luis Miranda, the policeman Torres, and one Lico, and upon reaching the corner the policeman noticed that the door of the store of Quiterio López was open, and the policeman entered the place.

"That the first door which the policeman observed to be open was the back door, and that he went in through the front door.

"That when Candelario said that he was going to bed it was about the hour of between 11 and 11.30; that this individual is accustomed to retire late, when there are wakes going on."

Claudio Torres, the policeman who arrested Robles, says:

"That he is a resident of Juncos and knows Candelario Robles.

"That on the night referred to witness was on duty in the town, and noticed that the door of the store of Quiterio López was ajar, and the bar to the same in the street; that witness arrested Candelario Robles in his house, at the time he was undressing to go bed.; that he still had on his shoes, and that the shirt which he wore was wet with perspiration and his body also; that Candelario told him that he had gone to bed at 10 o'clock.

"That they did not place him where he could not communicate with anyone, and that they did not beat him when he was arrested; that when he found Candelario Robles in his house, he was seated on his cot; that the witness first called from outside, and knocked with his club, and when a voice came from within asking who called, he replied 'the police'; that on entering he found Robles seated on the bed, and his wife standing by his side, half dressed; that the witness asked permission to enter, and his request was granted."

Rafael Aguayo, a corporal in the Insular Police force, says:

"That he is a resident of Juncos, and knows Candelario Robles, who is a resident of Juncos; witness has knowledge of this case through the investigation made by him as corporal of the Insular Police; that Candelario Robles called the witness to the jail and said: 'Corporal, I want you to release me, because I am innocent; that boy has accused me because he is my enemy, but I am going to tell you the truth; Antonio Rivera and Eusebio Segarra committed the burglary, and the same day they asked me where was the house of Quiterio López; also that he was disposed to help to find Eusebio, no matter where he might be."

The witnesses for the defense were evidently called to prove an *alibi* and their testimony is contradictory rather than corroborative of that given by Rivera.

After a careful examination of all this evidence we cannot accept the circumstances detailed by the various witnesses, taken all together, to be sufficient to connect the defendant

with the commission of the crime; but in the language of the instruction of the court to the jury we regard them as proof "which does no more than create a suspicion" that the defendant was connected with the crime committed. We do not think the verdict of the jury was sustained by the evidence found in the record, and for that reason only the judgment should be reversed and the cause remanded for a new trial.

*Accordingly decided.*

Chief Justice Quiñones and Justices Hernández, Figueras and Wolf concurred.